IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JONATHAN RIVERA-PIEROLA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| BOARD OF REGENTS FOR THE OKLAHOMA AGRICULTURAL AND MECHANICAL COLLEGES, STATE OF OKLAHOMA ex rel OKLAHOMA STATE UNIVERSITY, and ST MATTHEWS UNIVERSITY INC, | § § § § § § § § § § | NO. CIV-21-616-PRW |
| Defendants. | § | |

**DEFENDANT ST. MATTHEW'S UNIVERSITY, INC.'S
MOTION TO DISMISS AND BRIEF IN SUPPORT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant St. Matthew's University, Inc. ("SMU") respectfully requests that this Court dismiss Plaintiff's Complaint and the claims asserted against SMU therein for failure to state a claim upon which relief can be granted. In support of this Motion, SMU respectfully shows the Court as follows:

**I.   INTRODUCTION**

SMU is a school of veterinary medicine located in the Cayman Islands. Pl.'s Compl. ¶ 3. Following the basic science and pre-clinical classroom portion of SMU's veterinary program, SMU students complete their clinical rotations at veterinary schools located in the United States and Canada, including the Oklahoma State University College of

Veterinary Medicine ("OSU CVM"). *See id.* ¶ 11. Plaintiff is a former SMU student who matriculated to SMU in 2017 and attended its veterinary program in the Cayman Islands. *Id.* ¶ 10. After Plaintiff completed the basic science and pre-clinical classroom portion of his studies, he moved to Oklahoma to participate in clinical rotations at OSU CVM. *Id.* ¶ 11.

On April 21, 2020, OSU CVM dismissed Plaintiff due to his failure to satisfy its clinical program's academic requirements. *Id.* ¶ 52. As provided in the SMU Student Handbook (the "Handbook"), on which Plaintiff rests his breach of contract claim against SMU, academic standards for students' clinical rotations are set by the host affiliate school (in Plaintiff's case, OSU CVM) and dismissal decisions are "entirely within the purview of the affiliate school and [are] not subject to intervention by [SMU]." Ex. A (relevant Handbook excerpts) at p. 28. Pursuant to the Handbook, SMU "does not and cannot place [students who are dismissed by their host affiliate school] at a second clinical site . . . this decision is not subject to appeal by the student and is final." *Id.* Therefore, if a student is dismissed from an affiliate school's clinical program, he or she is, likewise, dismissed from SMU. *Id.* In accordance with this policy—which Plaintiff expressly acknowledged and agreed to when he executed the waiver further discussed herein—Plaintiff was dismissed from SMU as a result of his dismissal from OSU CVM. *See* Ex. B (Waiver); Pl.'s Compl. ¶¶ 55–56.

Despite the clear policies and procedures to which Plaintiff agreed when he enrolled at SMU, Plaintiff now asserts that SMU breached its alleged contract with him, as well as its alleged duty of good faith and fair dealing. As discussed herein, the Complaint does not

plead facts sufficient to state a legally cognizable claim for relief against SMU. More specifically, Plaintiff fails to plausibly allege that SMU breached any contract with Plaintiff (particularly in light of the specific Handbook language and the waiver Plaintiff executed in connection with his clinical rotations) and fails to allege a "special relationship" between SMU and himself such that SMU could be liable in tort for breach of covenant of good faith and fair dealing. Accordingly, the Court should grant SMU's Motion and dismiss Plaintiff's claims against SMU with prejudice.

## II. MOTION TO DISMISS STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Morman v. Campbell Cty. Mem'l Hosp.*, 632 F. App'x 927, 931 (10th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' are insufficient" to state a plausible claim to relief. *Morman*, 632 F. App'x at 931 (quoting *Twombly*, 550 U.S. at 555). Rather, a complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Muhammad v. Hall*, 674 F. App'x 810, 812 (10th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Although courts assume "the veracity of well-pleaded facts," this standard requires a complaint to plead "more than a sheer possibility that a defendant has acted unlawfully." *Morman*, 632 F. App'x at 932; *Hall*, 674 F. App'x at 812. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Hall*, 674 F. App'x

at 812 (quoting *Iqbal*, 556 U.S. at 679). As set forth below, Plaintiff fails to meet the pleading standard required by *Twombly* and *Iqbal*, and the Court should dismiss his claims against SMU accordingly.

### III. PLAINTIFF FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

#### A. Plaintiff's Allegations

Plaintiff alleges he formed a contract with SMU by the nature of his enrollment as a student and that "[s]ome of the terms of that contract are found in the SMU Student Handbook." Pl.'s Compl. ¶ 61. The only specific Handbook provision referenced in Plaintiff's Complaint provides "[f]aculty must test, grade, and review student work in a manner that is fair and reasonable." Pl.'s Compl. ¶ 63. Without relying on any additional provisions of the Student Handbook or any other alleged contract—and while ignoring other material provisions contained in the Handbook—Plaintiff generally alleges that "[w]here disputes arise students are entitled to file an academic grievance" to contest and appeal academic integrity violations. *Id.* at ¶¶ 64–66. Plaintiff further alleges that SMU "promised [him] a course of study including complete clinical rotations in all necessary areas, lasting for the scheduled duration and covering all necessary material." *Id.* at ¶ 67.

Plaintiff claims that SMU breached its contract with him when it dismissed him "without independent review or appeal, an opportunity for an academic grievance, or compliance with the disciplinary procedures and an opportunity to rebut the allegations of dishonesty" following OSU CVM's dismissal. *Id.* at ¶ 68. Plaintiff alleges that SMU also breached its contract by "fail[ing] to ensure that OSU provided a complete anesthesiology

rotation covering all necessary material for the full three weeks." *Id.* Plaintiff finally asserts that, because SMU breached its alleged contract with him, it likewise breached the covenant of good faith and fair dealing.

As set forth below, Plaintiff's claim for breach of contract and breach of the covenant of good faith and fair dealing should be dismissed for failure to state a claim upon which relief can be granted.

### B. Plaintiff's Breach of Contract Claim Should Be Dismissed

Plaintiff's breach of contract claim should be dismissed because he does not plausibly allege either the existence or breach of a contract between himself and SMU. For Plaintiff's breach of contract claim to survive a motion to dismiss, he must plead facts that create a reasonable inference that there was a contract between himself and SMU, and that SMU breached that contract. *Erikson v. BP Expl. & Prod. Inc.*, 567 F. App'x 637, 639 (10th Cir. 2014).

1. The claim should be dismissed because the alleged contract on which Plaintiff relies does not support his claim

Plaintiff generally relies on SMU's Student Handbook to support his breach of contract claim. Assuming, for purposes of this Motion, that the Handbook constitutes a contract between SMU and Plaintiff, a review of the Handbook is dispositive of Plaintiff's claims.  Indeed, the Handbook's provisions directly contradict Plaintiff's allegations and

establish that SMU complied with its terms.[1] *See, e.g., Integris Health, Inc. v. Ins. Co. of Pennsylvania, Inc.*, 571 Fed. Appx. 668, 670 (10th Cir. 2014) ("The courts will read the provisions of a contract **in their entirety** to give effect to the intention of the parties as ascertained from the four corners of the contract.") (emphasis added) (internal quotations omitted); *Tulsa Zoo Mgmt., Inc. v. Peckham Guyton Albers & Viets, Inc.*, 17-CV-644-GKF-FHM, 2019 WL 1029544, at *20 (N.D. Okla. Mar. 4, 2019) ("The intention of the parties is to be gleaned from the four corners of the contract. Each clause must be read in the context of the entire contract, and interpretations that render provisions meaningless should be avoided.") (internal citations and quotations omitted).

Page 28 of the Handbook sets forth SMU's policy on clinical rotation programs at affiliated schools (including OSU CVM). In pertinent part, the policy provides:

> vii. . . . **Academic standards for the clinical programs are set by the host affiliate school.**
>
> . . .
>
> x. **If a student fails to meet the required academic standards at an affiliate school and fails a rotation or is dismissed for academic or other reasons,** the student may be given the option of applying for readmission and/or remediation of the failed rotation. **However, the decision on such matters is entirely within the purview of the affiliate school and is not**

---

[1] Plaintiff does not attach the documents that he alleges form a contract between SMU and himself to the Complaint. However, when considering a 12(b)(6) motion to dismiss, the Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Ellison v. Roosevelt Cty. Bd. of Cty. Commissioners*, 700 F. App'x 823, 827, n.3 (10th Cir. 2017); *Becher v. United Healthcare Servs., Inc.*, 374 F. Supp. 3d 1102, 1106 (D. Kan. 2019) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."). As explained herein, Plaintiff's breach of contract claim rests entirely upon the Handbook and the Court may, therefore, consider the Handbook in its entirety in ruling on SMU's Motion.

**subject to intervention by the School of Veterinary Medicine at St. Matthew's University.**

xi. **If such an appeal is not successful or the student otherwise has failed to meet the required standards of the affiliated school and is dismissed from the affiliate school, St. Matthew's University considers the student to have failed to successfully complete the requirements for the degree, Doctor of Veterinary Medicine, and is also dismissed from the School of Veterinary Medicine at St. Matthew's University.**

xii. St. Matthew's University does not and cannot place such students at a second clinical site for completion of the degree requirements and **this decision is not subject to appeal by the student and is final.**

*See* Ex. A, Page 28 of Handbook (emphasis added).

Based on the express Handbook language, it is clear:

- SMU was not responsible for testing, grading, or reviewing Plaintiff's performance while he completed his clinical rotations at OSU CVM;

- SMU did not govern the length of the clinical rotations or the subject matter of the clinical rotations at OSU CVM;

- Plaintiff was not entitled to file an academic grievance or appeal with SMU based on his performance at OSU CVM; and

- SMU rightfully dismissed Plaintiff from its program because Plaintiff was dismissed from OSU CVM.

*See id.* Therefore, based on the terms of the alleged contract on which Plaintiff bases his claims (*i.e.*, the Handbook), Plaintiff has not and cannot state a claim for breach of contract against SMU.

        2.    <u>Plaintiff signed an acknowledgement and waiver that directly contradicts his claim</u>

SMU also requires each student to execute a Waiver of Right to Reassignment for Clinical Rotations School of Veterinary Medicine (the "Waiver"), which reiterates the

policies set forth above and on page 28 of the Handbook.[2] *See, e.g.*, Ex. B; *see also* Ex. A at p. 28 ("To ensure complete knowledge and understanding of these procedures, all students entering the clinical program will be required to sign a waiver, indicating that they understand and concur with this policy.  (See Appendix C [sic)]").

Plaintiff received and signed a copy of the Waiver upon his enrollment at SMU; thus certifying that he understood and agreed to SMU's policies regarding clinical rotation programs at affiliated schools.  Specifically, the signed copy of the Waiver provides:

> **The undersigned student understands and agrees as follows:**
>
> During the final year of clinical education, students are given the same program options/choices as internal students at each contract institution. **Academic standards for the clinical programs are set by the host affiliate school.**
>
> **If a student fails to meet the required academic standards at an affiliate school and is dismissed for academic or other reasons,** the student may have the option of applying for readmission and remediation of the failed rotation. **However, the decision for such actions is entirely within the purview of the affiliate school and is not subject to intervention by the School of Veterinary Medicine at St. Matthew's University. If** such an appeal is not successful or **the student otherwise has failed to meet the required standards of the affiliate school, St. Matthew's University considers the student to have failed to successfully complete the requirements for the degree, Doctor of Veterinary Medicine, and is dismissed from the School of Veterinary Medicine at St. Matthew's University.  St. Matthew's University does not place such students at a second clinical site for completion of the degree requirements and this decision is not subject to appeal by the student.**

Ex. B (emphasis added).

---

[2] The Waiver is part of and should be considered in combination with the Handbook because it is central to Plaintiff's claims. *See* footnote 1, *supra*.

By signing the Waiver, Plaintiff certified he understood and agreed that his host affiliate school (*i.e.*, OSU CVM) would set the academic standards of his clinical rotations, and, if he was dismissed from the host affiliate school during the clinical portion of his studies, he would also be dismissed from SMU without an opportunity for an appeal. *Id.* Indeed, the Waiver and accompanying provisions contained in the Handbook directly contradict Plaintiff's claim that SMU was obligated to independently review OSU CVM's dismissal decision or otherwise ensure Plaintiff was provided a complete clinical rotation following his dismissal from OSU CVM. *Compare* Ex. B, Waiver *with* Pl.'s Compl. ¶ 68; *see also Integris Health, Inc.*, 571 Fed. Appx. at 670 (court must consider contract in its entirety). Thus, Plaintiff has not and cannot state a claim for breach of contract against SMU and the Court should dismiss his claims accordingly.

        3.    <u>In the alternative, the claim should be dismissed because Plaintiff has not identified a contractual provision breached by SMU</u>

To survive a motion to dismiss his breach of contract claim, Plaintiff must identify specific provisions of a contract that Defendant allegedly breached. *See, e.g., Porter v. Farmers Ins. Co.*, 505 F. App'x 787, 791 (10th Cir. 2012); *Toth v. Gates Rubber Co.*, 216 F.3d 1088 (10th Cir. 2000). As explained above, Plaintiff generally asserts he had a contract with SMU "pursuant to his enrollment" and "some of the terms of that contract are found in the [Handbook]." Compl. ¶ 61. Plaintiff's Complaint quotes only one Handbook provision stating, "Faculty must test, grade, and review student work in a manner that is fair and reasonable." Compl. ¶ 63. Plaintiff does not allege where this

9

provision is located in the Handbook or how the provision constitutes a contractual obligation on the part of SMU.[3]

Although Plaintiff goes on to allege that SMU breached its obligations under the Handbook by failing to independently review OSU CVM's dismissal decision, he identifies no contractual provision that obligates SMU to conduct such a review. *Id.* at ¶ 68. Indeed, as explained above, the Handbook and Waiver expressly state that no such obligation exists. *See* Ex. A at p. 28; Ex. B. Because Plaintiff cannot identify any specific provisions of the Handbook or any other alleged contract SMU allegedly breached by its conduct, Plaintiff's breach of contract claim fails as a matter of law and should be dismissed.

### C. Plaintiff's Breach of Covenant of Good Faith and Fair Dealing Claim Should Be Dismissed

"The Oklahoma Supreme Court and the Tenth Circuit (applying Oklahoma law) recognize that every contract contains an implied duty of good faith and fair dealing but that in cases involving ordinary commercial contracts, a breach of this duty merely results in damages for breach of contract, not in independent tort liability." *Majesty Hosp., L.L.C. v. Dyess*, CIV-08-0975-F, 2009 WL 10673044, at *2 (W.D. Okla. Oct. 13, 2009) (citing *Combs v. Shelter Mutual Insurance Company*, 551 F.3d 991, 998-99 (10th Cir. 2008)). For the reasons set forth above, Plaintiff's breach of contract claim fails and he may not

---

[3] Notably, this provision is too vague to support a breach of contract claim. *See, e.g., Downs v. Novartis Pharm. Corp.*, No. 09-CV-0228-CVE-PJC, 2009 WL 1939832, at *4 (N.D. Okla. July 7, 2009) (explaining promise not to "retaliate" set forth in employer's code of conduct is a "vague assurance" that "cannot form the basis of a claim for breach of implied contract."). Moreover, the Student Handbook provides that SMU "reserves the right to change its rules and regulations, requirements for the degree, Doctor of Veterinary Medicine, and the courses offered by the School, or any other material in this handbook at any time." *See* Ex. A, Page 4.

"independently bring a claim for the ordinary breach of the duty of good faith and fair dealing." *Davis v. Am. Taekwondo Ass'n, Inc.*, CIV-13-1248-M, 2014 WL 1414885, at *3 (W.D. Okla. Apr. 11, 2014) ("[The duty of good faith and fair dealing] is addressed in a claim for breach of contract. Since plaintiff has also alleged a claim for breach of contract against ATA, plaintiff is unable to independently bring a claim for the ordinary breach of the duty of good faith and fair dealing."); *Brown v. Elephant Talk Commc'ns Corp.*, CIV-18-00902-PRW, 2020 WL 7220793, at *6 (W.D. Okla. Dec. 7, 2020) ("[I]n cases involving commercial contracts, like this one, a breach of the implied duty of good faith and fair dealing merely results in damages for breach of contract.")

To the extent Plaintiff seeks tort damages for SMU's alleged breach of the covenant of good faith and fair dealing, such claim still fails because Plaintiff does not plausibly allege the existence of a "special relationship" between himself and SMU that would support the imposition of tort liability against SMU under Oklahoma law. *See Access Endocrine, Diabetes, & Thyroid Ctr., P.C.*, 2014 WL 4385760, at *3 (dismissing tort-based claim for breach of implied duty of good faith and fair dealing where plaintiff failed to allege facts showing special relationship between the parties). Under Oklahoma law, tort liability for breach of such duty is primarily limited to "cases between an insurer and its insured because of the special relationship characterized by disparate bargaining power and a noncommercial purpose." *Access Endocrine, Diabetes, & Thyroid Ctr., P.C. v. Health Care Serv. Corp.*, No. CIV-14-441-C 2014 WL 4385760, at *3 (W.D. Okla. Sept. 4, 2014). The Oklahoma Supreme Court has "expressed reluctance to extend tort recovery for bad faith beyond the insurance field." *Embry v. Innovative Aftermarket Sys.*

11

*L.P.*, 2010 OK 82, ¶ 6, 247 P.3d 1158, 1160. Indeed, this Court recently held "there is no basis" for concluding that Oklahoma would recognize the "school/student relationship" as a "special relationship" that can support a tort claim. *Guillou v. Board of Regents for Okla. Ag. And Mech. Colleges*, Case No. 5:17-cv-00988-HE (W.D. Okla. March 1, 2018) (dismissing student's claim for breach of covenant of good faith and fair dealing).

Accordingly, to the extent Plaintiff's claim for breach of covenant of good faith and fair dealing seeks damages for breach of contract, the Court should dismiss such claim because it is duplicative of Plaintiff's breach of contract claim and Plaintiff has not plausibly alleged the existence or breach of a contract between himself and SMU. Likewise, to the extent Plaintiff's claim for breach of covenant of good faith and fair dealing seeks tort damages against SMU, the Court should dismiss Plaintiff's claim for breach of covenant of good faith and fair dealing because Plaintiff has not plausibly alleged a special relationship between himself and SMU.

## IV.   CONCLUSION

The allegations in the Complaint do not state a cognizable claim for relief against SMU as a matter of law. Accordingly, Plaintiff's claims against SMU should be dismissed with prejudice.

Respectfully submitted,

*s/Jeremy Tubb*
Kimberly F. Williams (pending *pro hac vice*)
Jennifer M. McCoy (pending *pro hac vice*)
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201

        T: (214) 740-8000
        F: (214) 740-8800
        kwilliams@lockelord.com
        jennifer.mccoy@lockelord.com

        and

        Jeremy Tubb, OBA #16739
        Courtney K. Warmington, OBA #18486
        Emma J. Payne, OBA #32849
        **FULLER TUBB BICKFORD**
        **WARMINGTON & PANACH, PLLC**
        201 Robert S. Kerr Avenue, Suite 1000
        Oklahoma City, Oklahoma 73102
        T: (405) 235-2575
        F: (405) 232-8384
        jeremy.tubb@fullertubb.com
        cwarmington@fullertubb.com
        emma.payne@fullertubb.com

        **ATTORNEYS FOR DEFENDANT**
        **ST. MATTHEW'S UNIVERSITY, INC.**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document has been sent via ECF electronic service on this 4th day of October 2021, to the following counsel of record:

| | |
|---|---|
| R. Jack Freeman | Jason J. Bach |
| jack@lsh-law-firm.com | jbach@backlawfirm.com |

**ATTORNEYS FOR PLAINTIFF**

        *s/Jeremy Tubb*
        Jeremy Tubb