**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JONATHAN RIVERA-PIEROLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-00616-PRW |
| | ) | |
| BOARD OF REGENTS FOR THE | ) | |
| OKLAHOMA AGRICULTURAL AND | ) | |
| MECHANICAL COLLEGES, STATE OF | ) | |
| OKLAHOMA ex rel. OKLAHOMA | ) | |
| STATE UNIVERSITY, and ST. | ) | |
| MATTHEW'S UNIVERSITY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant St. Matthew's University's Motion to Dismiss (Dkt. 14), Plaintiff Rivera-Pierola's response, styled "Memorandum in Opposition" (Dkt. 20), and St. Matthew's University's Reply in Support of Motion to Dismiss (Dkt. 21). For the following reasons, the Motion (Dkt. 14) is **GRANTED**.

### *Background*

This case arises on claims of breach of contract and breach of the duty of good faith and fair dealing.[1] Plaintiff Jonathan Rivera-Pierola is a citizen of Florida. In 2017, Mr. Rivera-Pierola matriculated to the School of Veterinary Medicine at St. Matthew's University ("SMU"), which is located on SMU's campus in the Cayman Islands. Mr.

---

[1] At this stage of the proceedings, the Court accepts a non-movant's well-pleaded allegations as true, so the account presented in this section reflects Mr. Rivera-Pierola's allegations.

Rivera-Pierola completed his required classroom coursework at SMU in the Cayman Islands. Once Mr. Rivera-Pierola reach Year IV status, he moved to Oklahoma and enrolled in clinical rotations in the College of Veterinary Medicine at Oklahoma State University ("OSU"), pursuant to an affiliation agreement between SMU and OSU under which SMU students studied at OSU while retaining their student status at SMU.

Once at OSU, Mr. Rivera-Pierola developed a fractious relationship with his clinical instructors. Mr. Rivera-Pierola alleges that his clinical instructors singled him out for extra scrutiny and unduly harsh criticism, accused him of lying, accused him of negligent care, and interfered with his ability to complete cases towards his case total. On the day before the rotation ended, the clinical instructors informed Mr. Rivera-Pierola that he was failing the rotation. Mr. Rivera-Pierola alleges that subsequently took and passed the written portion of his final evaluation, but that the clinical instructors gave him a low professionalism grade based on his supposed violations. This low professionalism grade resulted in Mr. Rivera-Pierola failing the course. Despite the supposed lying being listed as the basis for the failing grade, no academic integrity complaint was filed and Mr. Rivera-Pierola was not provided an opportunity to respond to the allegations.

Mr. Rivera-Pierola was required to appear before the College of Veterinary Medicine's Professional Standards Committee, which unanimously voted to dismiss Mr. Rivera-Pierola. Mr. Rivera-Pierola appealed the decision and was permitted to remain at the college on the condition that he would be dismissed if he received any future grade lower than a "C." Around this time, the college was transitioning to virtual clinical instruction due to COVID-19. Mr. Rivera-Pierola subsequently received a "D" in a rotation

and was dismissed from OSU. Based on OSU's decision, SMU also dismissed Mr. Rivera-Pierola.

Mr. Rivera-Pierola sued both OSU and SMU for breach of contract and the duty of good faith and fair dealing. The Board of Regents for OSU timely filed an answer. However, SMU moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

### *Legal Standard*

When reviewing a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has stated a claim upon which relief may be granted. All well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[2] Plaintiffs bear the "obligation to provide the grounds of [their] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[3] The pleaded facts must be sufficient to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level."[4] In considering whether a plausible claim has been made, the Court "liberally construe[s] the pleadings and make[s] all reasonable inferences in favor of the non-moving party."[5] But the Court need not accept

---

[2] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted) (alteration in original).

[4] *Id.* at 570.

[5] *Brokers' Choice of Am., Inc. v. NBC Univ., Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).

as true allegations that are conclusory in nature,[6] since "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."[7]

### Discussion

When a party refers to documents central to its argument in a complaint and a defendant then attaches those documents to a motion to dismiss, "district courts have discretion in deciding whether to consider such materials" without converting the motion to one for summary judgment.[8] As a preliminary matter, the Court declines to convert the motion to dismiss into a motion for summary judgment, but will consider the attached exhibits for the purpose of deciding the motion.

In his complaint, Mr. Rivera-Pierola states one cause of action against both Defendants: breach of contract and the duty of good faith and fair dealing. As to SMU, he relies on a theory that courts have imposed a contractual relationship between students and universities. He specifically alleges that he had a contract with SMU due to his enrollment in SMU's School of Veterinary Medicine, that some of the terms of that contract are embodied by the policies in the SMU Student Handbook, that these terms included certain guarantees—such as faculty would be fair and reasonable and there would be three tiers of review and due process for academic integrity violations—and that SMU violated these policies by failing to conduct its own investigation, failing to ensure that OSU gave Mr.

---

[6] *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154–55 (10th Cir. 2001).

[7] *Hall v. Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir. 1991).

[8] *Pragar v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999).

Rivera-Pierola appropriate instruction, and dismissing Mr. Rivera-Pierola based on OSU's dismissal.

*Applicable Law*

Since this case arises under the Court's diversity jurisdiction, the first step is to determine the applicable substantive law. In the initial briefing, both parties assumed that Oklahoma law was applicable. However, since Mr. Rivera-Pierola is a citizen of Florida and St. Matthew's University is located in the Cayman Islands, the Court ordered supplemental briefing on the choice-of-law question (Dkt. 22).

Sitting in diversity, the Court applies the law—including the choice-of-law selection provisions—of the forum state, Oklahoma. As Mr. Rivera-Pierola correctly identified in his supplemental briefing, Title 15, § 162 of the Oklahoma Statutes provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."[9] Since Mr. Rivera-Pierola relies on a theory of implied contract, neither the *lex loci solutionis* (location of performance) or the *lex loci contractus* (location of creation) is particularly clear. If assuming the existence of the implied contract and looking to intended performance, the implied contract would have been intended to be performed both in the Cayman Islands and in Oklahoma. But without a clear indication— due to the implied nature of the assumed contract—the Court should consider the place of creation. Yet here too there is uncertainty: was the implied contract created when Mr.

---

[9] Okla. Stat. tit. 15, § 162.

Rivera-Pierola matriculated into SMU while still living in Florida, when he first stepped foot on SMU's Cayman Island campus, or when he began attending OSU in Oklahoma (allegedly incorporating OSU's implied contract and therefore—amending or recreating—the implied contract with SMU)?

Given the continued lack of clarity, the Court returns to the briefing of the parties. In the initial round of briefing, both parties urged the Court to apply Oklahoma contract law. After supplemental briefing, Mr. Rivera-Pierola continues to urge the Court to apply Oklahoma contract law, while SMU asserts that Cayman Island law applies—but with the ancillary contention that Cayman Island draws from "other courts applying English common law when dealing with common law principles, such as contracts" and so "lead[s] to the same result" as Oklahoma law. Therefore, the Court will proceed by applying Oklahoma law to resolve the contractual issues of this case. In doing so, the Court follows the lead of another judge from this district, who also applied Oklahoma law to resolve a contractual dispute in a case involving SMU.[10]

*Breach of Contract*

In his complaint, Mr. River-Pierola argues that SMU breached the implied contract by (1) violating the Handbook provision that stated that "[f]aculty must test, grade, and review student work in a manner that is fair and reasonable," (2) violating the Handbook's

---

[10] *See* Order (Dkt. 42), at 13–15, *Guillou v. Board of Regents for the Oklahoma Agricultural and Mechanical Colleges, et al.*, Case 5:17-cv-00988-HE (W.D. Okla. Mar. 1, 2018) (applying Oklahoma contract law to a case involving an SMU student who had similarly traveled to OSU for clinical rotations and subsequently sued SMU for violating an implied contract).

guarantee of formal disciplinary proceedings and an opportunity to file an academic grievance that would receive three levels of review, and (3) violating SMU's "promised" course of clinical rotations that would "last[] for the scheduled duration and cover[] all necessary material."

At the outset, several pleading inadequacies accompany this breach of contract claim. Mr. Rivera-Pierola did not establish the existence of the implied contract and offered only conclusory assertions as to its existence, and he failed to identify which specific provisions of the Handbook (if any) contained the contractual guarantees that he invokes. However, even assuming the existence of the implied contract, it becomes clear from a review of the Handbook itself that—even assuming all facts asserted by Mr. Rivera-Pierola—there was no breach of contract by SMU.[11]

---

[11] It is by no means clear that the doctrine of implied contracts between universities and students exists under Oklahoma law. *See Heldman v. Oklahoma*, 415 F. Supp. 3d 1012, 1020 (W.D. Okla. 2019) ("To the extent Plaintiff intends to rely on a theory of implied contract, the Court can locate no clear guidance from the Oklahoma courts as to whether the SWOSU student handbook created a contract, and Plaintiff cites to none."). In the most recent case in which an Oklahoma court considered such a doctrine, it assumed that such implied contracts may exist without definitively deciding the issue. *See Mason v. State ex rel. Bd. of Regents of Univ. of Oklahoma*, 23 P.3d 964, 970 (Okla. Civ. App. 2001) (stating that an "implied contract [] *may* exist between students and a university" and that the court would "*assume* with [Plaintiff] that, while he was a student, he was party to a contract with [the University].") (emphasis added). Prior to *Mason*, it was clear that such a doctrine had not been recognized under Oklahoma law. *See Clifton-Davis v. State*, 930 P.2d 833, 835 (Okla. Civ. App. 1996) ("[T]he issue of whether an implied contract exists between a university and its student has not previously been addressed by the Oklahoma Supreme Court.").

When interpreting a contract under Oklahoma law, the primary goal is "to determine and give effect to the intention of the parties at the time the contract was made."[12] In so determining, the Court does not "narrowly concentrat[e] upon some clause or language taken out of context."[13] Rather, "the whole of [the] contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."[14] This approach requires the Court to "reconcile and harmonize" any "apparently conflicting provisions so as to give meaning to both, rather than rendering a provision meaningless."[15]

Here, the core of Mr. Rivera-Pierola's claims against SMU involves the assertions that SMU violated some contractual duty by failing to intervene or otherwise guard against the grading and dismissal by OSU. However, examining the rest of the "contractual terms" of the Handbook demonstrates that SMU had no duty to manage what happened to Mr. Rivera-Pierola once he was enrolled at OSU. Section VII-L of the Handbook described SMU's policies to students once the students are at affiliate universities for their clinical rotations. The relevant provisions read as follows:

> vii. . . . Academic standards for the clinical programs are set by the host affiliate school.

---

[12] *May v. Mid-Century Ins. Co.*, 151 P.3d 132, 140 (Okla. 2006).

[13] *Mercury Inv. Co. v. F.W. Woolworth Co.*, 706 P.2d 523, 529 (Okla. 1985).

[14] *Tulsa Zoo Management, Inc. v. Peckham Guyton Albers & Viets, Inc.*, 2019 WL 1029544, at *20 (N.D. Okla. Mar. 4, 2019) (quoting Okla. Stat. tit. 15, § 157).

[15] *J.D. Kirk, LLC v. Cimarex Energy Co.*, 604 F. App'x 718, 724 (10th Cir. 2015) (interpreting a contract under Oklahoma law). The Court cites unpublished opinions from the Tenth Circuit for their persuasive value, pursuant to Tenth Cir. R. 32.1 and Fed. R. App. P. 32.1.

. . .

x. If a student fails to meet the required academic standards at an affiliate school and fails a rotation or is dismissed for academic or other reasons . . . the decision on such matters is entirely within the purview of the affiliate school and is not subject to intervention by the School of Veterinary Medicine at St. Matthew's University.

. . .

xi. If such an appeal is not successful or the student otherwise has failed to meet the required standards of the affiliated school and is dismissed from the affiliate school, St. Matthew's University considers the student to have failed to successfully complete the requirements for the degree, Doctor of Veterinary Medicine, and is also dismissed from the School of Veterinary Medicine at St. Matthew's University.

. . .

xii. St. Matthew's University does not and cannot place such students at a second clinical site for completion of the degree requirements and this decision is not subject to appeal by the student and is final.[16]

Furthermore, to ensure that students understood that the affiliate universities would be in complete control of the clinical rotations, SMU required all students who were being reassigned to affiliate universities to sign a waiver. This waiver restated the key provisions of the Handbook, including that "[t]he undersigned student understands and agrees" that "[a]cademic standard for the clinical programs are set by the host affiliate school," academic dismal "is entirely within the purview of the affiliate school and is not subject to intervention by" SMU, and that dismissal from an affiliate school results in automatic dismissal from SMU.[17] Mr. Rivera-Pierola signed the waiver on January 9, 2017.[18]

Once juxtaposing these Handbook provisions and Mr. Rivera-Pierola's waiver so as to give a meaningful effect to the entire contract, resolving the three raised contractual

---

[16] *See* Handbook (Dkt. 14, Ex. A), at 3–4.

[17] *See* Waiver (Dkt. 14, Ex. B).

[18] *Id.*

issues becomes straightforward. If assuming the existence of an implied contract between SMU and Mr. Rivera-Pierola, this same implied contract also clearly established that SMU had no duty to independently test or grade a student's performance while at an affiliate university, no duty to offer additional or independent appeals processes for academic violations at the affiliate university, no duty to monitor or control the scheduling or covered material at an affiliate university, and no duty to place a student in another affiliate university or otherwise provide additional opportunities after dismissal from an affiliate university. Mr. Rivera-Pierola not only implicitly consented to these terms by attending SMU, he even signed a waiver verifying that he understood and agreed to these terms. As such, since Mr. Rivera-Pierola's complaint is built entirely around facts relating to his academic dismissal from OSU, he has identified no contractual duty that SMU violated and therefore has not stated a claim upon which he may obtain relief.

In response to SMU's arguments, Mr. Rivera-Pierola argues only that the "conflicting contractual provisions" create "a fact issue that cannot be resolved at the pleading stage."[19] However, at its core, this argument asks the Court to reject a fundamental interpretative principle of Oklahoma contract law—that all provisions must be "reconciled and harmonized" so as "to give effect to every part"—and cites no precedent or authority for such an unorthodox interpretational approach. The Court declines Mr. Rivera-Pierola's invitation to assume an interpretation of the implied contract that "would render

---

[19] *See* Response (Dkt. 20), at 7.

meaningless" the contract's other "explicit terms."[20] Accordingly, the Court finds that the nonconclusory facts Mr. Rivera-Pierola pleaded are insufficient to support a claim to which he is entitled to relief when the terms of the assumed implied contract are considered under Oklahoma contract law.[21]

*Implied Covenant of Good Faith and Fair Dealing*

Though not addressed specifically as a separate claim, Mr. Rivera-Pierola also alleged in his complaint that SMU violated its implied guarantee of good faith and fair dealing. Under Oklahoma law, "[e]very contract . . . contains an implied duty of good faith and fair dealing."[22] However, in cases involving "ordinary commercial contracts," a breach of this implied covenant "merely results in damages for breach of contract, not in independent tort liability."[23] To maintain a free-standing claim for violation of good faith and fair dealing, Mr. Rivera-Pierola must establish that a "special relationship" existed

---

[20] *Travelers Ins. Co. v. Dickey*, 799 P.2d 625, 630 (Okla. 1990).

[21] The outcome would remain the same even if the Court applied principles of Cayman Island contract law. *See Wood v. Capita Ins. Servs. Ltd.* [2017] UKSC 24 *per* Lord Neuberger, ¶ 10 (holding that the court must consider the contract as a whole to "ascertain the objective meaning of the language which the parties have chosen to express their agreement"); *see also Rainy Sky SA v. Kookmin Bank* [2011] 1 WLR 2900, *per* Lord Clarke, ¶ 23 ("Where the parties have used unambiguous language, the court must apply it.").

[22] *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 998–99 (10th Cir. 2008) (quoting *Wathor v. Mut. Assur. Adm'rs, Inc.*, 87 P.3d 559, 561 (Okla. 2004)).

[23] *Majesty Hosp., L.L.C. v. Dyess*, 2009 WL 10673044, at *2 (W.D. Okla. Oct. 13, 2009) (citing *Combs*, 551 F.3d at 999); *see also Brown v. Elephant Talk Comm'ns Corp.*, 2020 WL 7220793, at *6 (W.D. Okla. Dec. 7, 2020) ("[I]n cases involving commercial contracts, like this one, a breach of the implied duty of good faith and fair dealing merely results in damages for breach of contract.")

between the contracting parties, such as the special relationship between insurer and insured.[24]

Here, even accepting all of his nonconclusory facts as true, Mr. Rivera-Pierola has neither established the special relationship necessary to maintain an independent violation of good faith and fair dealing claim nor plausibly alleged a breach of the assumed implied contract such that the implied covenant could have been violated. Accordingly, this claim against SMU must also be dismissed.[25]

### Conclusion

Because Mr. Rivera-Pierola did not plausibly allege any claims against SMU to which he is entitled to recover, the Court finds that SMU should be dismissed from this action. Accordingly, SMU's Motion to Dismiss (Dkt. 14) is **GRANTED**.

**IT IS SO ORDERED** this 13th day of May 2022.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[24] *Wathor*, 87 P.3d at 561–62.

[25] *See Access Endocrine, Diabetes, & Thyroid Ctr., P.C. v. Health Care Service Corp.*, 2014 WL 4385760, at *3 (W.D. Okla. Sept. 4, 2014) (dismissing tort- based claim for breach of implied duty of good faith and fair dealing where plaintiff failed to allege facts showing special relationship between the parties).