

ORIGINAL

## NOT FOR OFFICIAL PUBLICATION

## IN THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA

### DIVISION IV

VIVEK VIJAY, on behalf of himself )
and other individuals similarly situated, )
)
Plaintiff/Appellant, )
)
vs. )    Case No. 119,809
)
STATE OF OKLAHOMA ex rel., )
BOARD OF REGENTS OF THE )
UNIVERSITY OF OKLAHOMA; and )
other affiliated entities and individuals, )
)
Defendants/Appellees. )

**FILED
COURT OF CIVIL APPEALS
STATE OF OKLAHOMA

MAR - 4 2022

JOHN D. HADDEN
CLERK**

Rec'd (date) 3-4-22
Posted
Mailed
Distrib
Publish ____ yes  X  no

APPEAL FROM THE DISTRICT COURT OF
CLEVELAND COUNTY, OKLAHOMA

HONORABLE MICHAEL D. TUPPER, TRIAL JUDGE

### AFFIRMED

Michael L. Brooks
THE BROOKS LAW FIRM
Oklahoma City, Oklahoma                                  For Plaintiff/Appellant

Michael Burrage
Patricia Sawyer
Austin Vance
J. Renley Dennis
WHITTEN BURRAGE
Oklahoma City, Oklahoma

and

**Exhibit 22**

Michael A. Tompkins
*Pro Hac Vice*
LEEDS BROWN LAW, P.C.
Carle Place, New York

For Defendant/Appellee

OPINION BY STACIE L. HIXON, JUDGE:

Vivek Vijay (Student) appeals the trial court's orders of July 7 and 23, 2021, dismissing his amended petition for breach of contract and unjust enrichment against State of Oklahoma, *ex rel.*, Board of Regents of the University of Oklahoma (University). Based on our review of the record and applicable law, we affirm the orders under review.

## BACKGROUND

Student filed a petition as a putative class against University asserting he and similarly situated students were entitled to pro-rata refunds of tuition and fees paid for the Spring 2020 semester.[1] Student alleged he paid University tuition and fees to attend University pursuant to a contract to receive in-person and on-campus educational services as detailed or conveyed in various applications, admissions, enrollment, and registration materials as well as pursuant to University's usual and customary practice of providing on-campus services. Student asserted University canceled in-person, on-campus educational services in response to the Covid-19 pandemic, and transitioned to online-only education while retaining the full

---

[1] Student filed a petition on August 7, 2020, and an amended petition on March 15, 2021.

Exhibit 22

amount of tuition and fees paid. Thus, University breached its contract with students and was unjustly enriched.

University moved to dismiss the action under 12 O.S.2011, §§ 2012(B)(1) and 2012(B)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. Specifically, University asserted Student failed to comply with the Governmental Tort Claims Act (GTCA). University further asserted it followed health directives from federal, state, and local authorities and instituted social distancing and safety precautions during the Spring 2020 semester due to the Covid-19 pandemic. University contended Student failed to sufficiently allege a contractual promise for in-person learning or that he had been harmed as he continued his education, received full credit, and graduated at the conclusion of the Spring 2020 semester. Rather, University asserted Student was alleging an educational malpractice claim, essentially asking the court to assess the quality of educational offerings. Finally, University noted tuition and fees are set by the Legislature and are a condition of enrollment.

After additional briefing and a hearing before the trial court, the court entered an order on July 7, 2021, dismissing Student's action for failure to state a claim upon which relief could be granted. The court held Student failed to identify an enforceable contractual promise for in-person, on-campus educational services. In addition, the court held Student failed to assert he had been harmed or that

3

**Exhibit 22**

University was unjustly enriched.[2] By order entered on July 23, 2021, the trial court held amendment would be futile and would not cure the defects in the amended petition pursuant to 12 O.S.2011, § 2012(G).

Student appeals.

## STANDARD OF REVIEW

Our review of a motion to dismiss involves *de novo* consideration of whether the petition is legally sufficient. *Fanning v. Brown*, 2004 OK 7, ¶ 4, 85 P.3d 841. *De novo* review requires independent, plenary, and non-deferential examination of the trial court's rulings of law. *In re Estate of Bell-Levine*, 2012 OK 112, ¶ 5, 293 P.3d 964.

In *May v. Mid-Century Ins. Co.*, 2006 OK 100, 151 P.3d 132, the Supreme Court clearly articulated the standard:

> Motions to dismiss are generally viewed with disfavor. The purpose of a motion to dismiss is to test the law that governs the claim (in litigation), not the underlying facts. A motion to dismiss for failure to state a claim upon which relief may be granted will not be sustained unless it should appear without doubt that the plaintiff can prove no set of facts in support of the claim for relief. The court, when considering a defendant's quest for dismissal, must take as true all of the challenged pleading's allegations together with all reasonable inferences that may be drawn from them. A plaintiff is required neither to identify a specific theory of recovery nor to set out the correct remedy or relief to which he

---

[2] The trial court did not dismiss Student's petition on the basis of the GTCA. As a result, the GTCA will not be addressed on appeal.

4

Exhibit 22

may be entitled. If relief is possible under any set of facts which can be established and is consistent with the allegations, a motion to dismiss should be denied.

*Id.* at ¶ 10 (footnotes omitted).

## ANALYSIS

### 1. Breach of Contract

On appeal, Student asserts the trial court erred in dismissing his claim for breach of contract.

To state a viable breach of contract claim, Student must assert: "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." *Cates v. Integris Health, Inc.*, 2018 OK 9, ¶ 11, 412 P.3d 98 (citations omitted). An enforceable contract requires the parties' "mutual consent, or a meeting of the minds," on all essential terms. *Beck v. Reynolds*, 1995 OK 83, ¶ 11, 903 P.2d 317. A contract may be written or oral, express or implied. 15 O.S.2011, § 131 *et seq.*; *Jones v. University of Cent. Okla.*, 1995 OK 138, ¶ 7, 910 P.2d 987. An express contract is one in which the terms are stated in words. *See* §132. Conversely, "the existence and terms of an implied contract are manifested by conduct." *Jones*, at ¶ 7. In order to create an implied contract the promises must be definite. *Russell v. Board of Cty. Comm'rs*, 1997 OK 80, ¶ 23, 952 P.2d 492.

Exhibit 22

In the present case, Student alleges he paid University tuition and fees pursuant to a contract to receive in-person and on-campus educational services and opportunities, that University provided a materially different alternative, and he was damaged as a result.[3]

Student acknowledges there is no specific, written promise to provide in-person, on-campus educational services. As evidence of an implied contract, Student cites various University brochures, the student handbook, course catalogues, website and other materials that he asserts convey or detail the promise of in-person, on-campus educational services.[4] University disagrees, asserting no

---

[3] University asserts the payment of tuition and fees are for registration for courses, not a particular method of course instruction, and are paid pursuant to Oklahoma law, not by contract. Tuition and fees are set by the Oklahoma State Regents, the governing body of University, pursuant to state statute. *See* Okla. Const., art. 13, § 8; 70 O.S.2011, § 3218.2; *Franco v. State ex rel. Bd. of Regents of Univ. of Okla.*, 2020 OK CIV APP 64, ¶ 29, 482 P.3d 1 ("the Oklahoma Legislature has delegated to the Regents the sole 'supervision, management and [] control of the University of Oklahoma . . . and all its integral parts,' including the power to adopt rules and regulations, enter into contracts and employ personnel"); *Pyeatte v. Board of Regents of Univ. of Okla.*, 102 F. Supp. 407, 410 (W.D. Okla. 1951), *aff'd* 342 U.S. 936 (1952) ("Government of the University [of Oklahoma] is vested in a Board of Regents with authority delegated to do everything necessary to accomplish the objects of the school, not expressly or impliedly prohibited."). Title 70 O.S.2011, § 3218.8 provides students are required to pay tuition and fees as a condition of enrollment. *See also* Board of Regents Policy Manual, § 4.5 (tuition and fees are required to register for courses).

[4] For example, Student cites University's website: "[]you will experience a stimulating academic community where you are a hands-on participant in the learning process. Discover the benefits of a major research institution while receiving the personal attention and support you deserve." Student also cites to the General Catalog, which provides for hands-on learning. Further, Student cites University's Handbook and Student Rights and Responsibilities Code, which provide students may use campus facilities. With respect to mandatory fees, Student cites University's website, which provides, *inter alia*, Student Activity Fee – "This fee supports student organizations and services, counseling and testing, student media, career services, campus facilities, and transportation services."

**Exhibit 22**

plausible reading of the materials give rise to an enforceable contractual promise, especially during a pandemic.[5] University also cites to disclaimers in its materials

---

[5] University contends Student is alleging educational malpractice, a cause of action rejected by courts. *See e.g., Gociman v. Loyola Univ. of Chicago*, 2021 WL 243573 (N.D. Ill. Jan. 25, 2021); *In re Columbia Tuition Refund Action*, 523 F.Supp.3d 414 (S.D. New York 2021). In *Bittle v. Oklahoma City Univ.*, 2000 OK CIV APP 66, ¶¶ 14-5, 6 P.3d 509, the Court of Civil Appeals noted:

> The great weight of authority generally holds that the law recognizes no cause of action for 'educational malpractice,' either in tort or contract, by a student against a private educational institution asserting inadequate or improper instruction. *See, e.g., Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 88 L.Ed.2d 523 (1975); *Swidryk v. St. Michael's Medical Ctr.*, 493 A.2d 641 (N.J. Super. 1985); *Paladino v. Adelphi University*, 454 N.Y.S.2d 868 (N.Y. App. 2d Dept. 1982). The courts uniformly reason that such a claim runs afoul of established public policy which both accords educational institutions broad discretion in matters purely academic, particularly in the evaluation of student performance, and directs judicial non-interference in decisions within that discretion. . . .
>
> That said, however, we find some authority which suggests that an educational institution's brochures, policy manuals and other advertisements may form the basis of a legally cognizable contractual relationship between the institution and its students. *See, e.g., Guckenberger v. Boston University*, 957 F.Supp. 306, 318 (D. Mass. 1997). Consequently, where the pleadings or evidence demonstrate some specific, identifiable agreement for an educational institution's provision of particular services to its students and an arguable breach of that specific agreement, the courts of many jurisdictions—apparently either as outside of or an exception to the general public policy bar to 'educational malpractice' claims—recognize presentation of a potentially viable breach of contract claim. *See, e.g., Cencor, Inc. v. Tolman*, 868 P.2d 396 (Colo. 1994); *Ross v. Creighton University*, 957 F.2d 410 (7th Cir. (Ill.) 1992); *Squires v. Sierra Nevada Educ. Foundation*, 823 P.2d 256 (Nev. 1991).

Accordingly, a student must do more than simply allege the education was not good enough. Rather, a student must point to an identifiable contractual promise that the educational institution failed to honor. Although Student asserts he paid for a first-rate education and an on-campus, in-person educational experience, Student further asserts University's brochures, policy manuals, and other materials form the basis of a legally cognizable contract for in-person, on-campus

providing that nothing contained therein creates a contractual relationship between the parties.[6] Finally, University asserts Student cannot show any breach caused damage, noting Student continued with his education through on-line courses, received academic credit, and graduated upon the conclusion of the 2020 Spring semester.

With respect to an implied contract, there is a split of authority when an educational institution's brochures, handbooks, or other materials may form the basis of a legally cognizable contractual relationship between the parties.[7] The Oklahoma Supreme Court has not specifically addressed this issue. However, we find *Russell*, 1997 OK 80, 952 P.2d 492, instructive. There, the Court recognized that an employee manual or personnel policy may form the basis of an implied educational services. Accordingly, we will address whether Student has alleged a viable breach of implied contract claim.

[6] For example, University cites its handbook: "Nothing herein creates any contractual, constitutional or other legal rights on behalf of the students . . . regarding the use of University property/facilities." University also cites its website and course catalog: "[t]he General Catalog is published for informational purposes and should not be construed as the basis of a contract between a student and [University]"; "[University] reserves the right at all times to discontinue, modify, or otherwise change its degree programs when it determines it is in the best interest of [University] to do so."

[7] For cases finding a student stated a viable breach of contract claim, *see e.g., In re Boston Univ., Covid-19 Refund Litigation,* 511 F.Supp.3d 20 (D. Mass. 2021); *Patel v. University of Vermont and State Agricultural College*, 526 F.Supp.3d 3 (D. Vermont 2021); *Salerno v. Florida Southern College*, 488 F.Supp.3d 1211 (M.D. Fla. 2020); and *Rosado v. Barry Univ. Inc.*, 499 F.Supp.3d 1152 (S.D. Fla. 2020). For cases finding a student failed to state a viable breach of contract claim, *see e.g., In Re Columbia Tuition Refund Action*, 523 F.Supp.3d 414 (S.D. New York 2021); *Oyoque v. DePaul Univ.*, 520 F.Supp.3d 1058 (N.D. Ill. 2021); *Ryan v. Temple Univ.*, 2021 WL 1581563 (E.D. Pa. 2021); and *Student "A" v. Hogan*, 2021 WL 119083 (D. Md. 2021).

8

Exhibit 22

contract between an employer and its employees. In addition to noting the traditional contract requirements of competent parties, consent, a legal object, and consideration, the Court stated the "the promises in the employee manual must be in definite terms, not in the form of vague assurances." *Id.* at ¶ 23. "Although the existence of an implied contract generally presents an issue of fact, if the alleged promises are nothing more than vague assurances the issue can be decided as a matter of law." *Id. See also Hayes v. Eateries, Inc.*, 1995 OK 108, ¶ 12, 905 P.2d 778 (only when the promises are definite and of the sort upon which the employee may reasonably rely, will a contract claim be viable).

In the present case, the trial court held University's materials amount to aspirational or informative statements and unenforceable expressions of intent. We agree. We do not view the vague assurances that students have the right "to use" campus facilities, that students are a "hands-on participant in the learning process," or, *inter alia*, that payment of fees "support access to the services" at University rise to the level of a definite, identifiable, and specific promise or agreement by University to provide a particular service to Student, *i.e.*, exclusively in-person, on-campus educational services. While the statements describe various features and opportunities, the statements do not indicate a specific promise to provide in-person, on-campus educational services. Rather, the statements constitute conclusory expressions of intent or aspiration. Accordingly, as a matter of law,

**Exhibit 22**

Student failed to allege the basis of a legally cognizable contractual relationship between the parties for in-person, on-campus educational services.[8]

Student further contends he had a reasonable expectation that in exchange for payment of tuition and fees, University would provide in-person, on-campus educational services as traditionally provided to students.

In *Max True Plastering Co. v. U.S. Fidelity and Guar. Co.*, 1996 OK 28, 912 P.2d 861, the Supreme Court adopted the doctrine of reasonable expectations in the context of an insurance policy. The Court specifically limited the doctrine's application to interpreting "ambiguous contract language or to exclusions which are masked by technical or obscure language or which are hidden in a policy's provisions." *Id.* at ¶ 24. *See also American Economy Ins. Co. v. Bogdahn*, 2004 OK 9, ¶¶ 9-10, 89 P.3d 1051. The Court further cautioned that "[i]f the doctrine is not put in the proper perspective, insureds could develop a 'reasonable expectation' that every loss will be covered by their policy and courts would find themselves engaging in wholesale rewriting of insurance policies." *Id.* at ¶ 18.

Oklahoma has clearly limited the application of the reasonable expectation doctrine to interpreting ambiguous insurance policy terms, or hidden or masked exclusions in the policy. Accordingly, the doctrine has no application in the

---

[8] As a result of this finding, we do not address the remaining elements of Student's breach of contract claim, *i.e.*, breach and damages.

present case. The trial court therefore properly dismissed Student's breach of contract claim.

## 2. Unjust Enrichment

Student further asserts the trial court erred in dismissing his claim for unjust enrichment.

Unjust enrichment is an equitable cause of action to correct a condition arising from the failure of a party to make restitution in circumstances where not to do so is inequitable, or one party holds property "that, in good equity and conscience, it should not be allowed to retain." *Harvell v. Goodyear Tire and Rubber Co.*, 2006 OK 24, ¶ 18, 164 P.3d 1028.

Here, Student contends it was unjust for University to retain the full benefits of tuition and fees where it did not provide the paid-for in-person, on-campus educational services. University disagrees, asserting Student has not alleged any wrongful or unjust behavior on the part of University. Rather, University contends the Board of Regents used its constitutional and statutory authority to establish tuition and fees and to continue the University through the pandemic so students could continue their education.

We find the trial court properly dismissed Student's unjust enrichment claim. The record does not provide that University received funds, *i.e.*, an enrichment, that it was not entitled to receive. As previously noted, the Oklahoma

Exhibit 22

State Regents establish University's tuition and fees pursuant to state law. *See e.g.*, Okla. Const., art. 13, § 8; 70 O.S.2011, §§ 3218.2, 3218.8; Board of Regents Policy Manual, § 4.5. In addition, University remained open and provided Student an education and credit hours, resulting in Student graduating upon the conclusion of the Spring 2020 semester. Accordingly, the trial court properly dismissed Student's unjust enrichment claim.

## CONCLUSION

The trial court's orders of July 7 and 23, 2021, dismissing Student's amended petition for breach of contract and unjust enrichment are therefore affirmed.

**AFFIRMED.**

FISCHER, C.J., and BARNES, P.J., concur.

March 4, 2022

**Exhibit 22**