# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JONATHAN RIVERA-PIEROLA, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> BOARD OF REGENTS FOR THE ) <br> OKLAHOMA AGRICULTURAL AND ) <br> MECHANICAL COLLEGES; STATE OF ) <br> OKLAHOMA ex rel. OKLAHOMA STATE ) <br> UNIVERSITY; and ST. MATTHEWS ) <br> UNIVERSITY, ) <br> ) <br> Defendants. ) | Case No. CIV-21-616-PRW |

## DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

s/Clinton W. Pratt
Clinton W. Pratt, OBA #21329
Gaylan Towle II, OBA #32884
Board of Regents for the Oklahoma
Agricultural and Mechanical Colleges
5th Floor, Student Union Building
Stillwater, OK 74078
(405) 744-6494 (phone)
(405) 744-7998 (fax)
clint.pratt@okstate.edu
gaylan.towle@okstate.edu

**ATTORNEYS FOR DEFENDANTS**

Despite Plaintiff's painstaking efforts to create a genuine dispute of material fact out of thin air in his Memorandum in Opposition to Defendants' Motion for Summary Judgment (the "Opposition"), he relies heavily upon information taken wholly out of context, partial quotes of witnesses that fail to properly characterize statements and/or implications, misapplication of the law, and a fundamental refusal to acknowledge facts of record, the most egregious of which will be addressed herein.

## RESPONSE TO PLAINTIFF'S ADDITIONAL MATERIAL FACTS

1. Response: Undisputed to the extent Plaintiff cites language from the AIP.

2. Response: Undisputed to the extent Plaintiff cites language from the AIP.

3. Response: Disputed. Section 2.01 of the AIP does ***not*** include any mandatory language. Instead, it sets forth the procedure to be followed ***should*** an instructor allege the occurrence of an academic integrity violation. Dkt. No. 34-13 at 1–2.

4. Response: Disputed. Plaintiff cites a ***portion*** of the relevant section of the AIP, which fails to provide the proper context. Section 1.03(B)(5) states instructors are expected to "[t]rust students to follow the academic integrity policy until the instructor has sufficient information to substantiate a violation, ***then*** confront students with information about the alleged violation, follow the procedure, and report violations." *Id.* at 3.

5. Response: Undisputed to the extent Plaintiff cites language from the AIP.

6. Response: Disputed. Plaintiff mischaracterizes testimony. Dean Risco testified that he could not recall an academic integrity violation being filed against a single clinical student, because "work in the clinical setting, would be very difficult to document" in relation to an academic integrity violation. Dkt. No. 43-3 at 15 (54:24–56:4).

7. Response: Undisputed to the extent the AIP applies to clinical students.

8. Response: Disputed. Plaintiff mischaracterizes testimony. When asked to explain why, to his recollection, no clinical student had been subject to an academic integrity violation during his time at OSU, Dean Risco cited the difficulty of applying the AIP to the clinical setting, outside the obvious examples of cheating on an exam or plagiarism. *See* Dkt. No. 43-3 at 15 (54:24–56:4).

9. Response: Disputed. Plaintiff has not established this "fact" through discovery or otherwise. Plaintiff wholly failed to cite *anything* suggesting the instructors' perception of his honesty or lack thereof was incorrect.

10. Response: Disputed. This statement is unequivocally false. Plaintiff's instructors specifically stated their concerns related to Plaintiff's dishonesty were ***not*** included as part of Plaintiff's grade/evaluation. *See* Dkt. No. 43-5.

11. Response: Undisputed to the extent no referral was submitted under the AIP. Disputed regarding the alleged impact of the instructors' honesty concerns on Plaintiff's grade. *See* Defendants' Response to Plaintiff's Additional Material Fact No. 10, *supra*.

12. Response: Disputed. Plaintiff has not established this "fact" through discovery or otherwise. Plaintiff wholly failed to cite *anything* suggesting the instructors' perception of his honesty or lack thereof was incorrect. Additionally, Plaintiff made no attempt in discovery to establish evidence supporting his claim that Dr. Irizarry, who was an intern at the time, had any animus toward Plaintiff or that her observations of Plaintiff during separate rotations that occurred months apart were in any way connected. Instead, Plaintiff merely declares these things to be true and "undisputed" facts in the case.

13. Response: Undisputed as to the statements contained in Plaintiff's Community Practice evaluation. Disputed regarding Plaintiff's misrepresentation of context. The comment section of the evaluation documented Plaintiffs shortcomings. Dr. Demars indicated "many areas of your performance need improvement." Dr. Sypniewski, who graded Plaintiff separately from Dr. Demars, made no mention of dishonesty in her evaluation and provided a detailed list of performance issues which led to Plaintiff's failing grade. Dkt. No. 43-7; Dkt. No. 34-17 at 10–11 (28:9–29:14) and 12–13 (46:11–47:14).

14. Response: Undisputed as no AIP violation was *alleged* to have occurred.

15. Response: Disputed. As Plaintiff previously noted, his Community Practice evaluation specifically states Dr. Irizarry *confronted* him regarding his lack of honesty. Additionally, the evaluation notes Drs. Demars and Sypniewski met with Plaintiff to discuss his performance issues, presumably including Dr. Irizarry's concerns, "at length for at least 30 minutes." Subsequently, Plaintiff met with the PSC and provided context for his academic failures—Plaintiff simply *never* mentioned anything concerning academic dishonesty. Dkt. No. 43-7; Dkt. No. 43-6 at 33–34 (129:9–132:23).

16. Response: Disputed. This is false. Plaintiff spoke at length with the PSC, and no evidence suggests Plaintiff ever challenged his perceived dishonesty, much less that the PSC held any such challenge against him. *See* Dkt. No. 43-6 at 33–34 (129:9–132:23); Dkt. No. 43-2. Additionally, the documents Plaintiff relies upon for this alleged "fact" are Dr. Gilmour's notes taken during a meeting with Plaintiff on March 11, 2020, one week *before* Plaintiff met with the PSC. *See* Dkt. Nos. 43-1 and 43-2.

17. Response: Undisputed to the extent Dr. Di Concetto testified that in a normal,

3

non-COVID situation, students have opportunities to "[s]pend time in the operating room" and "work under supervision of technicians." Dkt. No. 43-8 at 4 (11:16–13:19).

18.    Response: Undisputed to the extent "technical standards" are set forth. Disputed regarding Plaintiff's misrepresentation of context. The document Plaintiff cites pertains to the minimum physical standards ***students must meet*** to participate in the program (*e.g.*, vision, hearing, touching and proprioception, speech, etc.) and is thus irrelevant to Plaintiff's claims. *See* Dkt. No. 43-9 at 1–4.

19.    Response: Disputed. Plaintiff again mischaracterizes witness testimony. Dr. Di Concetto stated, "***The written exam is what truly captures their knowledge base more objectively***. However, in this case it may be argued that the complete lack of hands-on opportunities and a chance to apply theoretical knowledge to clinical scenarios and consolidate theoretical knowledge from monitoring and observing live animals under anesthesia ***might*** have contributed to his suboptimal performance." Dkt. No. 43-8 at 14 (51:13–52:23) (emphasis added).

20.    Response: Undisputed to the extent the pre-COVID syllabus listed in-person procedures.

21.    Response: Undisputed to the extent clinical rotations are generally based on students participating in or observing the treatment of animals in person.

22.    Response: Disputed. Plaintiff again mischaracterizes witness testimony. Dr. Di Concetto stated, "I would say that ***certain aspects*** of the rotation were clearly not comparable to an in-person situation simply because anesthesiology is—has a practical component that perhaps is not easy to replicate online in—like, hands-on. And that is why

4

I provided the videos, hoping that it would give a little bit more of an idea compared to just a speech." Dkt. No. 43-8 at 7 (22:11–20) (emphasis added).

23.   Response: Undisputed.

24.   Response: Undisputed.

## ARGUMENT AND AUTHORITIES

1. <u>Plaintiff Fails to Establish a Breach of Contract Claim regarding the AIP.</u>

As outlined in Defendants' Motion, Plaintiff continually blames anyone other than himself for his academic shortcomings. As his Opposition demonstrates, Plaintiff maintains this obstinate posture. In the Complaint, Plaintiff pointed to Drs. Demars and Sypniewski for their alleged failure to accuse him of an academic integrity violation—he did so despite his full awareness that questions of his dishonesty had been raised, through both direct confrontation during the rotation and his final evaluation, yet *no* evidence suggests Plaintiff *ever* expressed concerns regarding his perceived dishonesty.[1]

Now, at the eleventh hour, Plaintiff shifts his allegations, ***for the first time***, to instructors from his very first rotation at OSU, Small Animal Internal Medicine, and a university-wide conspiracy to deprive clinical students of due process. While these new allegations are improper and wholly without merit, they are representative of Plaintiff's modus operandi—refusing to take responsibility for his own academic failures.

Plaintiff is ***simply wrong*** in his assertion that all instructors ***must*** report any activity

---

[1] This includes: (1) to his instructors, *see* Dkt. No. 43-7; (2) to the PSC during his near hour-long meeting, *see* Dkt. No. 43-2 and Dkt. No. 43-6 at 33–34 (129:9–132:23); (3) in his written appeal, *see* Dkt. No. 43-3 at 32– 33; or (4) to Dean Risco when they met in person, *id.* at 6–7 (19:14–22:22).

5

suspected to be violative of the AIP. Nothing in the policy requires an instructor to file a violation. *See* Dkt. No. 43-14 at 10 (36:19–22). Once an instructor initiates the process, the policy must be followed, but, as to whether a report ***should*** be made, instructors are granted discretion. *Id.* at 9 (32:7–33:5). Before initiating the AIP process, instructors are expected to "[t]rust students to follow the academic integrity policy until the instructor has sufficient information to substantiate a violation." Dkt. No. 34-13 at 1–2. "The information should support a determination that it is 'more likely than not' that a violation of academic integrity occurred." *Id.* at 3. Each instance of Plaintiff's perceived dishonesty involved either the possibility of miscommunication or Plaintiff's word against an instructor's regarding what had transpired. *See* Dkt. No. 43-14 at 8 (27:25–28:23); Dkt. No. 43-7. Plaintiff himself even described the events as such in his appeal stating, "[o]n my Community Practice rotation, I got caught up in ***miscommunications leading to ambiguities and misunderstandings***." Dkt. 43-3 at 32–33 (emphasis added). Rarely, if ever, would any such instance meet a preponderance of the evidence standard, and Plaintiff fails to establish any evidence whatsoever to the contrary.

Furthermore, Plaintiff requested, and was granted, an extension to file his Opposition in order to conduct additional depositions of two witnesses—Dr. Daniel Burba and Candace Thrasher ("Thrasher"). However, having done so, Plaintiff now makes an urgent effort to discredit Thrasher because her testimony essentially negates his entire academic integrity argument. In her role as the manager for the academic integrity process, Thrasher utilizes the AIP more than most, if not all, OSU employees, and she is involved with ***every single*** academic integrity case at OSU. *See* Dkt. No. 43-14 at 10 (34:5–18). As

Plaintiff points out, Thrasher is tasked with facilitating the process set forth in the AIP, but she does not make ***substantive*** evaluations relating to the allegations. *Id.* at 9 (32:7–33:5). However, this limitation does not discredit or disqualify Thrasher's testimony from being immensely relevant and insightful, despite Plaintiff's assertion to the contrary. Under any objective standard, Thrasher is exceedingly more qualified to provide an informed opinion as to what constitutes a violation of the AIP than Plaintiff.

Thrasher testified she was unaware of any academic integrity violations being filed against clinical students. *See* Dkt. No. 43-14 at 11 (40: 2–9). She also indicated dishonesty does not necessarily equate to an academic integrity violation, and other methods are often utilized to address these types of issues. Providing examples, Thrasher said instructors may use an instance of dishonesty as a "teachable moment" or include a statement regarding honesty in the syllabus for the course or rotation. *Id.* at 4–5 (13:12–14:2). Throughout her deposition, Thrasher repeatedly indicated she views questions of honesty arising in the clinical setting to be in the "professionalism realm." *Id*. at 6–7, 9. This is consistent with the syllabus for Plaintiff's Community Practice rotation, which included a "Professionalism/work ethic" component to the grading structure and indicated students "will be graded on strict adherence to courtesy, ***honesty*** and responsibility when dealing with colleagues, clients and patients." Dkt. No. 43-4 at 103 (emphasis added). Further explaining this point, Dr. Demars indicated he would not consider a student lying to him about completing a medical record an academic integrity issue stating:

> I would not submit an academic integrity issue on that. That is a failure of expectations, that is not academic integrity. That is not willfully bypassing the system, or plagiarizing or those kinds of activities that would be an

7

      academic integrity issue. This is more of a professional skill. It's honesty, it's accountability, it's concepts of behaviors that we would expect a veterinarian to demonstrate.

Defendant's Exhibit 23 at 46:8–19 (attached hereto).

    Significantly, this claim also completely fails to recognize the AIP process is conducted not ***in lieu*** of the standard grading process but ***in addition*** to it. Plaintiff's evaluations document his considerable and consistent performance failures. Any mention of Plaintiff's dishonesty is made in conjunction with numerous other documented academic deficiencies. Therefore, even if an AIP violation had been alleged, the evidence is overwhelming that Plaintiff still would have failed due to his inability to meet the minimum academic standards. *See, e.g.*, Dkt. No. 43-7; Dkt. No. 34-17 at 10–11 (28:9–29:14) and 12–13 (46:11–47:14); Dkt. No. 34-16 at 6–9 (22:7–25:16).

2.  <u>Plaintiff Fails to Point to a Specific Agreement to Provide In-Person Instruction.</u>

    Plaintiff fails to differentiate his claim from one for educational malpractice, as he ***still*** has not identified a specific promise to provide in-person instruction. Preliminarily, Plaintiff's Opposition confirms his claim is one for alleged educational malpractice. Namely, Plaintiff extensively cites Dr. Di Concetto's testimony and the syllabus and grading criteria from a ***prior*** anesthesiology rotation ***in which Plaintiff did not participate*** to contrast the ***quality*** of Plaintiff's virtual rotation with in-person rotations. *See* Dkt. No. 43 at 20–21. Such an analysis is irrelevant to whether a particular service was provided. Further, Plaintiff's evidence cannot serve as the "definite, identifiable, and specific promise or agreement" necessary to support a contract claim against a university. *Vijay v. State of Okla. Ex. Rel., Bd. of Regents of the Univ. of Okla.*, 2022 OK CIV APP Case No. 119,809

(unpublished), at 9 (Dkt. No. 34-22); *see also Gokool v. Okla. City Univ.*, CIV-16-807-R, 2016 WL 10520949, at *4 (W.D. Okla. Dec. 29, 2016).

The syllabus and grading criteria from a ***prior*** anesthesia rotation were undeniably inapplicable to Plaintiff's rotation. *See* Dkt. No. 43 at 20. Additionally, although Plaintiff cites university materials, he fails to identify any ***specific language*** to support the existence of a promise for in-person instruction. The case on which Plaintiff primarily relies, *Miranda v. Xavier University*, fails to cure his deficiencies. 594 F. Supp. 3d 961 (S.D. Ohio 2022). In addition to being non-binding, it is ***contrary to Oklahoma law***. Oklahoma courts limit the application of the "reasonable expectation" doctrine to insurance policies and exclusions therein. *See Vijay* at 10–11 (citing M*ax True Plastering Co. v. U.S. Fidelity and Guar. Co.*, 912 P.2d 861 (Okla. 1996) and rejecting application of the reasonable expectation doctrine to an alleged university contract). Furthermore, it is readily distinguishable from this case. First, the *Miranda* court evaluated the student's claims under the motion-to-dismiss standard—not the summary judgment standard. *See Miranda* at 968. Second, and more importantly, the student in that case ***quoted*** Xavier materials in her complaint that "'***guarantee[d]*** . . . placement in quality clinical environment[s]'" and "told prospective students 'it is ***impossible*** to earn a BSN 100% online.'" *Id*. at 970 (emphasis in original). Unlike the student in *Miranda*, Plaintiff has quoted ***no*** language in the Complaint and/or Opposition to support his virtual instruction contract claim. *See id*. Accordingly, Plaintiff cannot demonstrate his claim is not one for educational malpractice, and the Court should grant summary judgment to Defendants.

9

3. <u>Plaintiff Fails to Demonstrate the Brief Cancellation of Class Constituted a Breach.</u>

Ironically, Plaintiff attacks Defendants' reliance on the ***applicable*** revised anesthesiology syllabus—which he cited in his Complaint to support his truncated course claim—and argues it should be disregarded because it was created only after "Plaintiff enrolled and OSU incurred its obligations." Dkt. No. 43 at 23. This is nonsensical. Students almost always receive a syllabus ***after*** enrolling in their course. Plaintiff also mistakenly suggests Defendants' argument regarding the early termination of the rotation was likewise premised on educational malpractice. Rather, Defendants argued the operative agreement—the applicable syllabus—***expressly*** gave the instructor flexibility to modify the schedule. Moreover, Plaintiff failed to produce ***any evidence*** (i) he was on-call for the weekend of April 11–12, 2020, (ii) any emergency cases occurred that weekend, and/or (iii) the Syllabus required Dr. Di Concetto to contact the scheduled on-call students. Plaintiff also makes no effort to refute Defendants' contention that the portion of the rotation that was cancelled was merely an informal "Q-and-A" session with students, and he conveniently fails to mention he ***did meet***—one on one—with Dr. Di Concetto ***after*** the final exam to discuss his grade. *See* Dkt. No. 43-8 at 12–13 (44:13–47:11). The Court should thus grant summary judgment to Defendants on this claim.

## **CONCLUSION**

Based on the arguments and authority contained in Defendants' Motion and in this Reply, Defendants respectfully request the Court grant Summary Judgment in their favor.

Respectfully submitted,

s/Clinton W. Pratt
Clinton W. Pratt, OBA #21329
Gaylan Towle II, OBA #32884
Board of Regents for the Oklahoma
Agricultural and Mechanical Colleges
5th Floor, Student Union Building
Oklahoma State University
Stillwater, OK 74078-7044
(405) 744-6494/Fax: (405) 744-7998
clint.pratt@okstate.edu
gaylan.towle@okstate.edu

**ATTORNEYS FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of August, 2023, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

R. Jack Freeman
1861 East 71st Street
Tulsa, Oklahoma 74136
jack@lsh-law-firm.com

  and

Jason J. Bach
7881 W. Charleston Blvd., Suite 165
Las Vegas, Nevada 89117
jbach@bachlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

                s/Clinton W. Pratt